*Atty. Gen'l W. O. Smith*, contra.

---

## ANTONIO DA COSTA DANIEL *v.* PORTUGUESE MUTUAL BENEFIT SOCIETY, of Hawaii, a Corporation.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JUNE 16, 1896.          DECIDED NOVEMBER 23, 1896.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE CARTER IN PLACE OF WHITING, J., DISQUALIFIED.

In a suit for an accounting against a mutual benefit society by one claiming to be entitled to certain benefits upon the death of a member of the society: Held, affirming the decree appealed from, that the deceased member was in good standing under the rules of the society; and that a father aged 60 years and a cripple, who had a wife of the same age to support, and to whose support the son, the decedent in this case, contributed his wages, and who possessed $800 at the death of his son, was "without adequate means of support" within the rules of the society.

OPINION OF THE COURT BY JUDD, C.J.

This is an appeal from Mr. Justice Whiting, then Circuit Judge, on a bill in equity, for an account. The plaintiff claims that a death benefit accrued to him as the father of one Antonio da Costa Daniel, junior, who was a member of the defendant corporation the same being a Mutual Benefit Society. One of the defendant's rules is that each member shall contribute one dollar a month and one dollar on the death of any member, he being in good standing, for funeral expenses and support, generally speaking, of those dependent upon the deceased. The death benefit in the case before us was collected, amounting as agreed upon by the parties to $794.50, the death occurring on the 10th of February, 1892. The question is whether the plaintiff is entitled to recover this sum. The first point of defense is that the deceased member was not in good standing but was delinquent both in the payment of the monthly dues and some death benefits assessed upon the death of other members. Considerable testimony was taken on this point. It appears that the deceased member lived at Waialua, on this island, some 30 miles from this city and the defendant corporation had an agent there, one Antonio Chaves, who undertook to make the authorized collections and account to the society. There is considerable confusion and contradiction in the testimony, and the receipts shown by the family of plaintiff as given by the agent and the receipts given to the agent by the treasurer for death benefits and dues of the deceased can hardly be reconciled. It may be that the explanation offered is true, that the agent would often hold back several payments and report them together to the treasurer. The stubs in the receipt book are not in order, many are missing and as evidence are not conclusive. Whether the payment of dues accruing before the death of the deceased and paid by the family after the death is a compliance with the rules we do not deem it necessary to decide. The agent says that these amounts due by deceased were all paid, and upon a review of the testimony we cannot say that they were not. A strong fact

to sustain this view is the action of the president of the society who upon the death of the young man in question promptly announced the assessment of the death benefits, which were promptly collected, or nearly all of them, though the president had it in his power to ascertain if the member then lately deceased was in good standing or not. We therefore sustain the finding of the Circuit Judge that the deceased in question was in good standing and so far forth the benefits are not forfeited.

The more difficult question of fact remains, whether under the rules of the society the father of the deceased is entitled to the benefits. The deceased left no widow or children. His father (plaintiff), mother, two brothers and a sister survived him. The rule applicable is Section 8 of the articles of organization, translated from the Portuguese language as follows: "The donation referred to in the two preceding numbers 5 and 6 (the death benefits of $1 or 50c. according as the deceased was of the first or second class), will be only given to the fathers or brothers of the deceased if it can be proven that any of these persons were maintained by the deceased and were left without other means of support." The plaintiff, father of deceased, was at the date of this suit about 60 years of age, and was a cripple probably from partial paralysis of one leg. He had for some years been able to work only half the time and his infirmity was increasing. His family consisted of his wife, also of about 60 years of age, a daughter and two sons, Manuel and John. Both these sons were of age. Manuel, after he was of age, while living at Waialua had contributed to his parents' support $10 per month, but having removed to Kahuku had stopped his contribution. Both the deceased son and John had given all their wages earned during their minority to their father and lived with him and ate at the family table. John's contribution to his father had also ceased, and he had moved to Kahuku. The deceased's contribution of his wages continued until his last illness and death. The sister is married and lives on another island.

We must consider solely the legal obligations involved. Chil-

dren who are of age are not under legal obligations to support their parents, however strong the moral obligation to do so may be. But as the parent cannot compel his children who are of age to support him, their existence and ability cannot be considered as "means of support" within the rule of the society.

It is in evidence that a fund had accumulated in this family which was deposited in the Postal Savings Bank in the name of the plaintiff: The president of the society who held office at the date of the death in question, says that after the death he had the pass book of plaintiff in his hands and assisted plaintiff to draw some money, and that the amount in bank was $1100, perhaps a little more; that when he saw the book again about Christmas, 1892, there was $800 to plaintiff's credit. Plaintiff's contention is that the fund being mainly contributed by the children of the family is subject to their needs. Evidence was given that two amounts of $100 each were drawn from it to help two of the children from legal difficulties and that $300 of it was taken out to buy a barber's outfit which brought to the plaintiff $10 a month as rent. The exact amount remaining at the date of the death in question is not clearly shown. The legal ownership of the fund we hold was in the plaintiff and the drafts upon it for the extraordinary needs of members of the family were made with the consent of the plaintiff. No child of his could, so far as the evidence goes, sustain an action for any part of it. How much remained and whether what remained we should hold to be "means of support" are questions of fact not easy to decide. The pass book was not produced. Counsel for defense urge that it was incumbent upon plaintiff to produce it and that its absence is a suspicious circumstance. Counsel for plaintiff urge that it would have been produced if it had been asked for by defendant. Plaintiff says it was at home, and would sustain his testimony that "the most money he had in the bank was $800 about three years ago," and that "the balance is now (the time of the trial) not quite $200." He also says that he had $800 in the bank at the time of his son's death. If we assume $800 to be the means of support relied upon by

defendant to take plaintiff out of the rule as to the benefit, is this sufficient to support plaintiff and his wife? We assume here that the support of plaintiff included the support of his wife, he being under legal obligation to maintain her. This sum placed at interest on safe security at 8 per cent. per annum would yield only $64 per year, whereas while in Honolulu plaintiff testifies his maintenance cost $8 a month or $96 per year. Doubling this for his wife's support it is clear that interest alone would not be "means of support." "Other means of support" in the connection used in the rule means "adequate means of support." But if the corpus of this fund of $800 should be drawn upon for the support of plaintiff and wife, it depends upon the length of their lives whether it can be considered adequate. It might last eight years if not invested at a greater rate than given by the Savings Bank. This pair might live longer and then be in absolute poverty, the fund being exhausted. If invested at a véry large rate the security would likely be weak and the fund might be lost altogether. It is a close question whether the plaintiff has shown himself to be within the class mentioned in the rule, to wit, a father upon the death of a son who had maintained him, being without other means of support. On the whole and taking into consideration that the judgment of the trial court, who had all the witnesses before it, found in favor of the plaintiff we do not feel authorized to reverse the findings made and therefore disallow the appeal and affirm the decree made.

*P. Neumann*, for plaintiff.

*Kinney & Ballou*, for defendant.

### DISSENTING OPINION OF CIRCUIT JUDGE CARTER.

I respectfully dissent from the conclusion of the majority that the father of the deceased was left "without other means of support." The testimony most favorable to the plaintiff shows that at the death of his son he had eight hundred dollars ($800.00) in the Postal Savings Bank. The burden was on the plaintiff to prove that he was entitled to the donation or

assessment, and in establishing this, testimony of the cost of living of himself and wife was proper, if not necessary. The only evidence of this fact was the plaintiff's testimony that he was maintaining himself in Honolulu, where he was temporarily living, for eight dollars ($8.00) a month. Considering the mode or manner of living of persons of their circumstances and surroundings, it cannot be said he was without "other means of support." He had ample means of support for a number of years, just how many does not appear, but in all probability he had sufficient for the remainder of his life.

Under the laws of the organization, upon the death of a married member the donation is payable to his widow. A single man is entitled to certain benefits in case of sickness, and upon his death his father or brothers of the deceased are entitled to the donation, provided it is proven that these persons were maintained by the deceased, and were left without other means of support. This last condition, I think, the plaintiff failed to prove.